UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DERRICK REDD,

                Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICERS, DETECTIVE EDWARD BALFE, DETECTIVE RONALD WALDRON, DETECTIVE BILLY MILLAN, POLICE OFFICER FRESNEL AND POLICE OFFICERS JOHN DOES

                Defendant(s).
-------------------------------------------------------------------X

Index No.: _____

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff DERRICK REDD, ("Plaintiff") by his attorneys, KELLY & GROSSMAN LLP, complaining of THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICERS, DETECTIVE EDWARD BALFE, SHIELD NUMBER 2035, DETECTIVE RONALD WALDRON, SHIELD NUMBER 2293, DETECTIVE BILLY MILLAN, SHIELD NUMBER 6770, POLICE OFFICER FRESNEL, SHIELD NUMBER 3067, AND DETECTIVES JOHN AND JANE DOES 1-5, POLICE OFFICERS JOHN DOE(S) AND JANE DOE(S) (Defendants), respectfully alleges, upon information and belief, as follows:

## NATURE OF ACTION

1.     This is a civil action, pursuant to 42 U.S.C. §1983 and §1988, and state law, seeking monetary damages for Plaintiff, DERRICK REDD, due to his wrongful arrest, prosecution, conviction, and 9 years and 5 months imprisonment caused by the pervasive misconduct of the New York City Police Department ["NYPD"].

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2. This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of New York.

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and by principles of pendent jurisdiction.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. On or about July 2, 2015 Plaintiff served upon Defendant, CITY OF NEW YORK, timely notice of the present claims pursuant to New York General Municipal Law § 50-e. A hearing pursuant to New York General Municipal Law § 50-h was held on March 19, 2019.

6. This action has been commenced within one year and ninety days of the accrual of Plaintiff's causes of action.

7. Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## THE PARTIES

8. Plaintiff, DERRICK REDD, is a citizen and resident of the State of New York and of the United States, and resides within the Eastern District of New York.

9. Defendant, CITY OF NEW YORK, of which the County of Queens is a subdivision, is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

10. Defendant, DETECTIVE EDWARD BALFE, hereinafter BALFE, at all relevant times, was a Detective/Police Officer, employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New

York, and acted within the scope of his employment. He is sued in his individual and his official capacities.

11. Defendant, DETECTIVE RONALD WALDRON, hereinafter WALDRON, at all relevant times, was a Detective/Police Officer, employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. She is sued in her individual and his official capacities.

12. Defendants, DETECTIVE BILLY MILLAN, hereinafter MILLAN, POLICE OFFICER FRESNEL, hereinafter FRESNEL, at all relevant times, were Detectives/Police Officers, employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of their employment. They are sued in their individual and official capacities.

13. Similarly, the NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of the CITY OF NEW YORK. Detectives and police offices employed by the NYPD are agents and employees of the City of New York, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Crime, Initial Investigation, Plaintiff's Indictment, and Prosecution

14. On October 25, 2008, the body of 9 month pregnant, Niasha Delain, was found stabbed and mutilated in an apartment located at 109-57 Lefferts Boulevard, Queens, New York.

15. The Plaintiff, Derrick Redd, along with the victim's mother, Towanda Wimms found the body of the victim at approximately 7:30 pm.

16. The Plaintiff was the father of the baby that the decedent was carrying.

17. The police arrived and interviewed the Plaintiff and the Mother of the victim. They also canvassed the neighborhood seeking possible witnesses.

18. They interviewed the resident in the apartment above the murder scene, Jinette Gerve. Ms. Gerve indicated that she lived upstairs from the apartment of Niasha Delan and that she did not hear anything and did not even believe that the apartment was occupied. She repeated this to two different Detectives.

19. Derrick Redd voluntarily accompanied the detectives to the precinct and cooperated fully without invoking his right to counsel.

20. While at the police station, Balfe, Waldron and Milan interrogated Redd unlawfully. They did so without proper Miranda warnings and falsely claimed Redd made certain statements to them. They questioned him about his whereabouts between 10 am and 2 pm. The statements were fabricated by defendants Balfe, Waldron and Milan.

21. During this period, P.O. Fresnel was in the interview room with Redd. She offered her condolences to initiate conversation and reported those alleged conversations to Milan, who memorialized them in a DD-5. The notes were false, including the assertion that she – "later learned the identity of the male who made the above statements" – when she was present in the back seat of the police car with Redd on the way to the precinct. She falsely claimed that Redd made certain oral admissions that were untrue and fabricated in order to

secure an arrest. Derrick Redd was at the precinct being interrogated for a total of 24 – 28 hours before he was released without being charged.

22. Over a week after the murder and with no arrest made to date, Detectives Waldron and Milan interviewed the neighbor who lived in the apartment above the crime scene again. This time, Jinette Gerve changed her testimony to falsely indicate that she heard a commotion in the apartment downstairs, could not make out much of what was said, but allegedly heard someone say, "Stop Derrick."

23. Defendants Milan and Waldron coerced Gerves and forced her to fabricate and give false testimony in the Grand Jury and at both trials against Derrick Redd.

24. Police Officer's John Doe(s) and Jane Doe(s) coerced at least two other witnesses to falsely incriminate Plaintiff by offering them cash and other compensation and/or with threats.

25. That there was no physical evidence connecting the Plaintiff to the crime and therefore, no probably cause for the arrest of Derrick Redd - without the fabricated evidence provided by Balfe, Waldron, Milan, Fresnel and the coerced testimony of Gerves.

26. Gerves was then given a host of benefits to secure her perjured testimony including but not limited to, assistance with relocating to a new apartment, assistance with her immigration status and various assistance in obtaining a new job. All of these inducements were intended to secure the testimony of Gerves in implicating the defendant falsely and unlawfully.

27. The defendant's fabricated evidence of Redd's statements to P.O. Fresnel and suborned the coerced and false testimony of Gerves, all in order to establish probable cause to connect Redd to the murder, despite not having sufficient evidence to do so.

28. On or about November 17, 2008 Derrick Redd was arrested by Detective Balfe and charged with Murder 2, Criminal Possession of a weapon 4th and Abortion 2. The arrest of Derrick Redd was unlawful and without probable cause and any indictment secured was obtained without fabricated evidence and perjured testimony at the Grand Jury.

29. On or about January 4, 2012, Redd was convicted in a Jury trial of Murder in the Second Degree, Abortion in the Second Degree and Criminal Possession of a weapon in the Fourth Degree.

30. On July 6, 2016 the Appellate Division Second Department reversed the conviction of the Plaintiff due to pervasive prosecutorial misconduct and ordered a new trial.

31. During the investigation for the second trial, the police questioned Shaqira Pollar, the mother of Redd's son. They attempted to obtain her testimony against Redd by claiming that Redd was involved with her ex-boyfriends murder.

32. On April 4, 2018 the Plaintiff Derrick Redd was acquitted of all charges after a Jury trial in Queens Supreme Court with the Honorable Barry A. Schwartz presiding.

33. As a result of his wrongful conviction, Redd was incarcerated from November 17, 2008 until his acquittal on April 4, 2018 and charges that were procured by false, fabricated and perjured testimony.

## FIRST CAUSE OF ACTION
### Pendent State Claim - Malicious Prosecution

34. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 33 of this Complaint.

35. By virtue of the foregoing, the Individual Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceeding against DERRICK REDD.

36. The criminal proceedings resulted in a conviction.

37. There was no probable cause for the commencement or the continuation of the criminal proceedings.

38. The Defendants acted with actual malice.

39. Defendant CITY OF NEW YORK is liable under the principle of respondeat superior.

## SECOND CAUSE OF ACTION
### Pendent State Claims - Fabricating Evidence

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-39 as though fully set forth herein.

41. Defendants fabricated evidence against REDD prior to the start of his criminal proceedings while they were investigating the case, and continued fabricating evidence while REDD's criminal proceedings were pending, by influencing and coercing witnesses to testify falsely against REDD.

42. Defendants fabricated evidence against REDD prior to the start of his criminal proceedings while they were investigating the case, and continued fabricating evidence while

REDD's criminal proceedings were pending, by knowingly soliciting false statements and testimony from witnesses.

43. Defendants fabricated evidence against REDD prior to the start of REDD's criminal proceedings while they were investigating the case, and continued fabricating evidence while REDD's criminal proceedings were pending, by knowingly making false statements and omissions which were material to the proceedings.

44. The fabricated evidence was the direct and proximate cause of REDD's indictment and convictions as he would not have been indicted or convicted if Defendants had not fabricated the evidence against him.

45. Therefore, each of these fabricated acts were part of the chain of causation which deprived REDD of his liberty.

## THIRD CAUSE OF ACTION
### Pendent State Claims - Respondeat Superior/Vicarious Liability

46. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-46 as though fully set forth herein.

47. Defendants DETECTIVE EDWARD BALFE, DETECTIVE RONALD WALDRON, DETECTIVE BILLY MILLAN, POLICE OFFICER FRESNEL AND DETECTIVES JOHN AND JANE DOES 1-5 and the additional investigators who investigated REDD but whose identities Plaintiff does not yet know, were at all times acting under color of State law and within the scope of their employment when they violated REDD's constitutional rights and committed the various torts against him, as outline above.

48. As their employer, the City of New York is vicariously liable for their actions pursuant to the doctrine of respondeat superior.

## FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Under State Law

49. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 48 of this Complaint.

50. Defendants engaged in a continuous pattern of extreme and outrageous conduct directed at Plaintiff that continued until his release from prison.

51. Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause Plaintiff severe emotional distress.

52. Specifically, Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, coerced witnesses into making false statements to be used against Plaintiff, created false official records to be used against Plaintiff, initiated or caused the initiation and continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so, abused judicial process in order to gain unlawful custody of and to coerce witnesses to make false statements against Plaintiff and commit perjury at Plaintiff's trial, Brady, Giglio and Rosario material before, during, and after trial, attempted to cover up and conceal their misconduct, and repeatedly and continually lied to and defrauded every court that reviewed Plaintiff's conviction concerning the existence of evidence favorable to Plaintiff and their past misconduct.

53. Plaintiff suffered severe emotional distress as a result of, and that was proximately caused by, the Defendant's aforementioned actions.

54. By virtue of the foregoing, Plaintiff suffered the actual damages identified below.

55. Defendant CITY OF NEW YORK is liable under the principle of respondeat superior.

## FIFTH CAUSE OF ACTION
### Abuse of Process Under State Law

56. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 of this Complaint.

57. Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

58. Specifically, actions include but are not limited to, fabricating a witnesses statement to falsely place REDD at the scene of the crime, documenting in a DD-5 false and misleading statements from a witness that were known to be false and procured through witness intimidation, unauthorized by law.

59. Defendants used such process to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain unlawful, coercive custody of the aforementioned individuals in order to intimidate them into giving false statements against Plaintiff which the Defendants knew, believed, and intended would later be used in court against Plaintiff at the criminal trial, and which were so used.

60. Defendants did so with intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

61. By virtue of the foregoing, Plaintiff was caused the actual and special damages identified below.

62. Defendant CITY OF NEW YORK is liable under the principle of respondeat superior.

## SIXTH CAUSE OF ACTION
### 42 U.S.C. §1983; Denial of Due Process and a Fail Trial Under the Fifth, Sixth and Fourteenth Amendments; Malicious Prosecution and Deprivation of Liberty Under the Fourth and Fourteenth Amendments

63. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 of this Complaint

64. Defendants knowingly and willfully manufactured, or caused the manufacturing of, a false statement, which they prepared, improperly compelled or induced both Jinette Gerve and others to testify to - under oath, implicating defendant's participation in the murder.

65. They knew that the statements would, and caused the statements to, be relied upon by prosecutors and the Court as a basis to formally initiate his prosecution, to hold him for trial without bail, and to compel witnesses to give testimony consistent with their statements at the trial itself.

66. Defendants thereafter knowingly swore to a false Criminal Court complaint initiating the criminal prosecution of Plaintiff, and causing Plaintiff to be held without bail.

67. The aforesaid conduct, which Defendants committed in concert with and in aid of each other, and/or in in concert or conspiracy with others named and unnamed, operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

    (a) Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence" including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

    (b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

      (c)      To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

68. The following violations of Plaintiff's Federal Constitution rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty and detention without bail, his wrongful conviction, his subsequent imprisonment, and his other injuries and damages.

69. The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

70. Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

71. By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

### SEVENTH CAUSE OF ACTION
### (42 U.S.C. § 1983; Denial of Due Process and a Fair Trial Under the Fifth, Sixth and Fourteenth Amendments; Malicious Prosecution, Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth and Fourteenth Amendments; Defendants City of New York et al.)

72. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 71 of this Complaint.

73. Knowing that any colorable cause to continue the prosecution had evaporated, the named defendants and others acted in concert and conspired with others, named and unnamed, to

use any means, no matter how unlawful or coercive, to intimidate them into falsely accusing Plaintiff of the charged crimes.

74. These illegal and unconstitutional means included, but were not limited to intimidating witnesses to sign statements that were known to be false, and manufacturing the false statements of Jinette Gerve and others to implicate DERRICK REDD in the crime.

75. These lawless actions foreseeably caused the aforementioned witnesses to manufacture false evidence which Defendants then used to continue Plaintiff's malicious prosecution, without probable cause, and to bring about his false conviction at trial.

76. Defendants provided false statements in a successful effort to cover up their previous misconduct in coercing witnesses, deceiving the court, defense, and jury; withholding Brady and Rosario material to oppose Plaintiff's meritorious actions to overturn his conviction. Defendants then memorialized these false statements in a sworn affirmation knowing it would be used to defeat Plaintiff's efforts to overturn his conviction, and it was so used, causing Plaintiff to serve additional years in prison.

77. Additionally, Defendants, acting in an investigative capacity, had a duty to Plaintiff to carry out ongoing obligations, pursuant to the Due Process Clause of the Constitution and Brady v. Maryland, 373 U.S. 83 (1963), to disclose, upon Plaintiff's request, documents and information favorable to Plaintiff with respect to his criminal prosecution and conviction. Nevertheless, acting in concert with others, said defendants knowingly, willfully, recklessly, and/or with deliberate indifference to their Constitutional and statutory obligations, failed to disclose said documents and information to Plaintiff, thereby substantially delaying Plaintiff's efforts to overturn his wrongful conviction and prolonging his prosecution and imprisonment.

78. The aforesaid conduct operated to deprive Plaintiff of his rights under the Constitution and Laws of the United States:

   (a) Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, or manipulated to provide such statements and testimony, in violation of the Fourth and Fourteenth Amendments, and the due Process and Fair Trial Clause of the Fifth, Sixth and Fourteenth Amendments, to the United States Constitution;

   (b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

   (c) To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

79. The following violations of Plaintiff's federal constitutional rights by the Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiff's malicious prosecution without probable cause, his wrongful conviction, his subsequent imprisonment, the defeat and delay of his efforts to overturn his wrongful conviction, and his other injuries and damages.

80. The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendant's employment and authority.

81. Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, negligently, and/or deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

82. By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

### EIGHTH CAUSE OF ACTION
### (Monell/42 U.S.C. § 1983: Claim Against Defendant City of New York for the Actions of the NYPD)

83. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 82 of this Complaint.

84. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant, CITY OF NEW YORK, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

85. Prior to Plaintiff's arrest, policymaking officials of the NYPD, were deliberately indifferent to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

    (a) The use of excessive promises of rewards and unduly coercive interrogation techniques with vulnerable potential witnesses, including drug users and addicts, drug dealers, and/or individuals fearing prosecution and imprisonment for their own criminal behavior;

    (b) The determination of probable cause to make an arrest; and

    (c) The continuing duty of police investigators to reserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information ("Brady material")

>favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under Brady.

86. With respect to "a" and "c" in the preceding paragraph, prior to Plaintiff's arrest and the initiation of his prosecution in 2002, the NYPD provided limited training.

87. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant CITY OF NEW YORK, including but not limited to, The New York City Police Commissioner, who knew (or should have known):

>(a) to a moral certainty that such policies, procedures, regulations, practices, and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases:
>
>(b) that such issues either present police employees with difficult choices of the sort that instruction, training, and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and
>
>(c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

88. The aforementioned policymaking officials had knowledge of the notice alleged in the preceding paragraph based upon, among other circumstances:

>(a) credible allegations, many substantiated by judicial decisions findings, that NYPD officers had wrongfully withheld material evidence or knowingly given false or misleading testimony (see Ex. B) appended

     hereto and incorporated herein by reference, listing some of these decisions);

(b)  civil lawsuits, some of which resulted in substantial civil settlements, credibly alleging that police had falsified, exaggerated, or withheld material evidence, or conducted searches or arrests without probable cause (see Ex. A appended hereto and incorporated herein by reference, listing some of those lawsuits);

(c)  numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise under Brady as well as the probable cause requirements of the Fourth Amendment;

(d)  judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their Brady obligations and for failing to adopt adequate Brady disclosure policies, see Carter v. Harrison, 612 F. Supp. 749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendations of then Magistrate Shira A. Scheindlin), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide truthful testimony and to disclose evidence that favors criminal defendants under Brady, see Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992), and Carter v. Harrison, supra;

(e)  formal reports of the N.Y.C. Comptroller's Office and the Bar Association of the City of New York criticizing the NYPD and the N.Y.C. Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial actions; and

(f)  the inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure of officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

89.  Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates), had final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of Brady material.

90. The Police Commissioners, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the above-mentioned constitutional requirements.

91. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, DERRICK REDD, which he knowingly and intentionally breached, or to which he had deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

92. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant, CITY OF NEW YORK and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Department of Plaintiff's rights under the Constitution and laws of the United States.

93. By virtue of the foregoing, Defendant, CITY OF NEW YORK is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries.

## NINTH CAUSE OF ACTION

(Negligent Hiring, Training and Supervision Under State Law; Defendant City of New York)

94. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 93 of this Complaint.

95. By virtue of the foregoing, Defendant, CITY OF NEW YORK is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the BDAO and/or the NYPD with regard to their aforementioned duties.

## **DAMAGES DEMAND**

WHERFORE, Plaintiff demands judgment against the Defendants as follows:

a. For compensatory damages of not less than $50 million;

b. For punitive damages of not less than $100 million.

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. § 1099 and to the inherent powers of this Court;

d. For such other and further relief as this Court may deem just and proper.

Dated: West Islip, New York
May 13, 2019

**LAW OFFICES OF DENNIS J KELLY, PC**

_____
Dennis Kelly, Esq.
Attorneys for Plaintiff
1248 Montauk Highway
West Islip, New York 11795
Telephone: (516) 686-6768
Facsimile: (516) 686-6771

To: Corporation Counsel of the City of New York
All Defendants